Cateon, Ch. J.
To give any account of the receipt of notes, money, &c. Mrs. Ewing pleads the statute of limitations. The principal question is, does it apply in cases where the possession has been acquired by fraud? This is the well settled rule at law. Cocke and Jack vs. M’Ginnis, Martin and Yerger, 361: Porter’s lessee vs. Cocke, Peck, 41. Generally, not to say in all cases, where the legal right has been barred by the legislature, and the remedy in the courts of law cut off, the equitable right and remedy in the courts of chancery to the same thing have been hcilden to be concluded by the same bar. And although the act of limitations applies by its terms only to suits at law, and has been applied in a court of equity by analogy, yet this court proceeds upon principles as fixed and certain as the «courts of law do; and of these settled principles one is, that the act of limitations is a good plea, where, if the suit had been at law, the plea would be good, except in cases of a fraudulent concealment of the cause of action. Peck, 43, 46: 3 Yerger’s Rep. 232: 17 Vesey, 96: 7 John. Ch. Rep. 122: 1 Maddox, 205.
The object here is to aid an execution at law; to give effect to a legal writ and legal right, because of the concurrent jurisdiction in equity; to relieve against the fraudulent conveyance tending to hinder the creditor of the grantor. There being no express trust by contract between Dougherty and Mrs. Ewing, time would bar Dougherty. The complainants come in asserting Dougherty’s right to the property, treating (as they have a .right to do) the *234 fraudulent conveyance as merely void. Had he the same right, (which the statute prohibits to him) would he be barred by the adverse possession for three years? As to the slaves, this court held in Kegler vs. Miles, (Martin and Yerger, 426) that three years adverse possession conferred a good title, on which the possessor for three years might recover from the former owner. As to these, Dougherty’s right of property was gone when the bill was filed, and the complainants are equally barred.
The other personal property possessed by Mrs. Ewing for more than three years before suit brought, it is insisted is yet the property of Dougherty. Mrs. Ewing’s possession barred any remedy he had, the complainants come in to enforce his remedy, and must abide by his title to recover, and are equally barred. There is no fair distinction between the case of lien by execution, and a lien by an implied trust, otherwise arising. The cause of Campbell and Armstrong (3 Yerger’s Reports, 232) furnishes a fair instance. Campbell held possession of land warrants by express trust; as to him, Armstrong’s heirs were not barred. His possession was deemed consistent with their right. But Trimble claimed by purchase from Campbell; the court declared him to be a. trustee by implication, and would have protected his title by the statute of limitation had he retained it. So here, the-judgment formed a lien on the personal property of Dough-erty, and he held possession in the nature of an express trustee for the creditors! But Mrs. Ewing was no party to the judgment; she is pursued, and her legal tille (prima facie valid) is challenged, on the ground that she paid no consideration, and aided in the fraud, and therefore she holds as a trustee by implication, for those having aright to stand in Dougherty’s stead. Her title is just as capable of being protected as was that of Cocke, in the cause of Porter vs. Cocke. His deed was voluntary and void as to creditors, yet adverse possession protected the title. In Jack and Cocke vs. M’Ginnis, an express trustee, holding by parol contract, and sued at law, *235 was protected on the best settled principles. That Mrs. Ewing is entitled to avail herself of the statute, from the nature of the title by which she claims to hold, is clear; but the difficulty is, when does the act of limitations commence its operation in her favor, as against the complainants. If from the time when the judgment was obtained, as is insisted, society would have no repose under such circumstances. To hold thus, and then apply the principle asserted in Reed vs. Norton, (3 Haywood) that a vendee from a fraudulent vendee took no title, which, as to the creditors of the fraudulent vendor, rested with him, the evil consequences would be very great. There is no principle upon which to rest the bar other than the one stated, that the creditors must take .the title as it stands between the fraudulent vendor and vendee, at the time he files his bill or levies his execution.’ If time has confirmed the title to lands or slaves, or barred the remedy to recover other goods, it is in accordance with the established policy of the country, that the general repose of society is preferred to the few chance cases of hardship which the general rule inflicts. Here Dougherty kept the complainants in litigation for more than three years, and Mrs. Ewing, the fraudulent vendee, might have profited by it. But had her title been fair, she might have been unable to prove it after the lapse of time, for it was over eleven years after she took her title and possession before she was sued; and sub-purchasers from her would still more need the protection of the statute. In truth, the time to form the bar is too short for our advanced state of society. In countries where the time to form the bar is five or six years, cases of hardship can rarely occur. But the remedy of the evil, if evil there be, is with the legislature, not the courts; we are bound to apply the law as we find it, without repealing it, in effect, by making exceptions. This the court declared it had no power to do in Cocke and Jack vs. M’Ginnis, and a stronger temptation to judicial legis *236 lation can hardly present itself. We adjudge the plea of the statute of limitations to the original bill to have been a good defence, save as to the watches first possessed by Mr. Ewing shortly before this bill was filed.
An amendment alleges the concealment of the fraud until within three years next before the filing of the bill. This is denied by the answer, and not proved on the part of complainants, or any facts from which it may be inferred. The transactions were all open and subject to be known.
In June, 1819, Martin Beaty made a settlement between the Doughertys and Mrs. Ewing. They fell one thousand and thirty-six dollars in her debt, and executed their note for this sum. In 1830, there is a credit endorsed on this note for two watches, the one left by Geo. Dough-erty at his death, at one hundred and sixty dollars, and John’s, at two hundred and twenty-five dollars. The complainants call on the defendant, Mrs. Ewing, to disclose the property of John and George Dougherty, which they allege she fraudulently conceals. They charge that Mrs. Ewing had placed in her hands a large amount of money, notes and effects of the firm, for the purpose of covering the same from the creditors. She admits she had assigned to her a large number of notes and debts, &c. as stated in the complainants’ bill, all of which were not of sufficient value to pay and satisfy the bona fide claims which she, as executrix of her husband, had against the said John and George Dougherty. Mrs. Ewing held two notes, as executrix of Nathaniel Ewing, one for one thousand and thirty-six dollars, and another for eight hundred and sixty dollars. The latter was discharged by the household furniture, and which did not cover it. For the one thousand and thirty-six dollars, a mortgage was given on the Patterson tract of land. Her lien purports to have been for eighteen hundred dollars, but forthe amount over the note it was colorable. Thevendor of the land to the Doughertys had a prior lien by judgment for part of the purchase money, and Mrs. Ewing *237 bought it in at execution sale for about one thousand dol- ° . . lavs, to give effect to her lien. She afterwards sold it for some thirty-six hundred dollars. That by this means and others this note was extinguished is manifest. The evidence is Found in the bill and answer. - The bill alleges, that John and George Dougherty, as merchants, had acquired much property, and were doing a large business; that they pretended to fail; and to defeat their creditors, and that without consideration, said John assigned and transferred all the property that they then owned, that could be reached by execution, to said Elizabeth Ewing. Amongst the property thus transferred were twenty or thirty ne-groes, &c. That at the time he pretended to fail, he had on hand a large amount of money, debts and notes due the firm, which were also handed over to the said Elizabeth, and which she has long since collected, &c. That Mrs. Ewing received the notes and debts she admits, but pleads the act of limitations to the discovery of the amount. We will take it there was abundance to extinguish the note for one thousand and thirty-six dollars, this being the only debt due her from the Doughertys, as executrix of Nathaniel Ewing. The defendant, Mrs. Ewing, has then in her possession two gold watches, which she received without consideration, and which are subject to the satisfaction of the judgment of the complainants.
It will be well not to overlook several objections made in argument. The first is on part of the defendants, that Thomas Faris, one of the joint judgment creditors and plaintiff at law, is not before the court, but his assignee, Hayter, who as assignee, has no right to enforce the execution at law by bill. The assignment to Hayter is proved by the assignor; no objection was made below for want of parties, by demurrer or otherwise, and we think it is not proper now to dismiss the bill on this ground.
The complainants object, that the possession of the *238 property by Mrs. Ewing has not been adverse to Dough-erty, that they lived in the same house and jointly exercised ownership over it, and Mrs. Ewing’s name was merely used as a cover. The proof of adverse possession by Mrs. Ewing is satisfactory.
The decree will be reversed and the watches ordered to be sold.
Peck, J.
The question of the statute of limitations, as presented in this case and before this court, is not void of difficulty. Taking it for true, that the bar by limitations may be avoided by showing concealment of the fact of fraud in the transfer of the property, and that proof of the concealment must come from him making the averment, still enough has been shown by the complainant to insist that he shall not be barred.
In such a case, full and conclusive proof of the concealment is not to be expected: at most, prima facie evidence is all that should be required. That evidence is before us in the return on the execution. It was the duty of the sheriff to find property, and here, in a case whe're so recently Dougherty held property more than sufficient to satisfy the demand, owing to a concealment by color of right in another, he, by the concealment, has no alternative but to return nulla bona; the sheriff is not compelled to run the hazard of a trespass by seizure of the property, nor is the plaintiff bound to give a bond of indemnity. When, therefore, the sheriff returns the fact of nothing found, we look to that return, in connection with the other facts of fraud proved in the case, and the mind, by the return' itself, is brought to the conclusion that such a return, by an officer on oath, could not have been made if the concealment had not existed. It is the very best evidence of the concealment where the fraud is proved; because, but for that concealment the execution, which is called the life of the láw, would, in the hands of him acting on oath, have been effectual.
*239 Thus, I conclude, by the return of the execution we , . , - _ . . are put upon the enquiry as to the iraud, and it it is proved to exist, then the bar by the statute of limitations is out of the way. If this be not so, then are creditors helpless, and the whole of our laws made to prevent frauds lifeless. The enquiry in this case, in my opinion, should be conducted further than to the watches only.